**In re David Paul MART, Debtor.**

**Bankruptcy No. 88–03889–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 21, 1989.

Robert L. Roth, Miami, Fla., for debtor.

Robert L. Jennings, Holland & Knight, Ft. Lauderdale, Fla., for Chicago Title.

Irving E. Gennet, trustee.

---

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

This matter is another futile chapter in the tireless [1] attempt by the plaintiff title company to recover its losses (in excess of $3.4 million) resulting from the fraud and embezzlement of its inadequately supervised attorney-agent, *Jeffrey* Mart, son of Gilbert and Lucille Mart, husband of Sharon, and brother of this debtor, David Mart.

There is no question, in my mind, that plaintiff was severely victimized by its agent, Jeffrey, who became an alcoholic and a drug addict. Jeffrey's discharge has been denied but there is no reasonable prospect that plaintiff will ever recover anything from him.

This particular attempted recovery began with allegations incorporated in Adversary Proceeding No. 88–0587 (seeking exception from David Mart's discharge).

Plaintiff had also filed an "objection to exemption claims" (CP 10) which repeated the allegations in the Adversary Proceeding.

When the two matters were brought on for trial and disposition here, Chicago Title announced that it had just filed before the District Court a request that these matters be withdrawn from the bankruptcy court by the district court because the same evidence and parties would be before Judge Ryskamp in the RICO litigation. For that reason, this court deferred hearing until Chicago Title's request for withdrawal had been decided by Judge Ryskamp. The request was denied on June 26, 1989.

This matter was immediately reset in this court as soon as we were notified of that ruling.

The matter was tried here on August 15 and on September 7. I now conclude, as has already been indicated, that Chicago Title has once again failed to prove its allegations.

As has been characteristic of Chicago Title's pleadings, its allegations are so general that I agree with the debtor it is quite impossible to know from the Renewed Objection to Exemption Claim (CP 19 at ¶ 5) the asserted *specific* factual predicate for its objection. It is clear, however, that Chicago Title has now abandoned its allegations seeking exception from discharge. (CP 19 at ¶ 6). However, during the dialogue that preceded the receipt of Chicago Title's evidence (CP 25) and during the receipt of that evidence, it became clear that Chicago Title's only present basis to object to any exemption in this bankruptcy is that it can prove that the claimed exempt property includes some of the money stolen by brother Jeffrey, which Chicago Title believes it can trace to the exempt property.

It seeks the imposition of a resulting or constructive trust upon the exempt property to that extent.

It is fundamental, at least in Florida, that a constructive trust arises by operation of law against one who, by actual or constructive fraud, by duress or abuse of confidence, by mistake, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, has acquired the legal right to property he ought not, under equitable principles, to hold and enjoy. The remedy is designed to prevent unjust enrichment. 56 *Fla.Jur.2d,* Trusts § 94 at nn. 52 and 53.

If Chicago Title has adequately alleged a predicate for the imposition for a constructive trust, it has utterly and completely failed to offer any proof of actual or constructive fraud, duress, abuse of confidence, mistake, artifice or concealment.

The property targeted by Chicago Title in this proceeding is the debtor's homestead in New Creek or Palm City, within Martin County, which David and his wife acquired as an estate by the entireties on

---

1. This quest reminds me of *Les Miserables* and inspector Javert's equally tireless pursuit of Jean Valjean. Plaintiff has failed so far against the parents (90 B.R. 556 and 87 B.R. 206 (J. Weaver)), against their annuity (88 B.R. 436); against the parents' corporation, Riverside

Shoppes, Ltd. (80 B.R. 243 (J. Weaver)), against Sharon (75 B.R. 808), and against all of the above in a District Court RICO action which has been pending several years. Some of this litigation is now before the Circuit.

April 10, 1985, and which they sold on January 19, 1987 to third parties for $227,-500. The net proceeds from that sale, after the satisfaction of liens, was $31,699.

Secondly, it targets a so-called "spec house" which the debtor and his wife constructed on a lot in Crane Creek, Martin County, which they had purchased on July 17, 1986, as an estate by the entireties. The house was built with a construction loan obtained from AmeriFirst and was sold on January 19, 1987 for a total of $226,500. The net proceeds from that sale was $37,216. When Chicago Title filed its RICO action, it also filed a lis pendens against each of these properties. Therefore, in order to sell the properties, the debtor and his wife had to enter into a stipulation with Chicago Title in the RICO action that the foregoing net proceeds would be placed in escrow with Chicago Title's counsel in an interest-bearing escrow account pending the disposition of its asserted constructive trust over these sale proceeds.

Chicago Title's attempted evidence was given by a CPA, Stine, who had attempted to trace the funds embezzled by Jeffrey in 1984, 1985 and 1986. It was his conclusion that David Mart and his wife had no source of funds to acquire their homestead in 1985 or the lot purchased the next year upon which the spec house was constructed or to construct the spec house other than from the funds embezzled by Jeffrey and disbursed to David.

I find that the testimony of Stine is inconclusive and unpersuasive both as to the attempted tracing of the embezzled funds to David and as to his attempts to demonstrate that neither of these properties could have been financed from any other source.

The respondent's evidence, on the other hand, was persuasive to me in explaining that both the homestead and the lot upon which the spec house was built were purchased with payments made to David by his father on account of David's services for many years as a construction assistant to his father in his father's real estate developments. As has already been noted, the spec house was built with a construction loan from an independent third party.

The purchase of the homestead was largely financed, also with an independent third party, Sun Bank. In fact, it was the debtor's default on these loans, which forced him to sell these two properties, at distress prices, because of Chicago Title's lis pendens.

I agree with Chicago Title that if it had proved that these properties were financed to any significant extent with money traceable directly to the funds embezzled by Jeffrey, and if it had proved that David furnished no consideration for those funds or had obtained them with actual notice that they had been embezzled from the third party, a resulting trust would be appropriate. However, I find that Chicago Title failed to prove either of these essential predicates for relief.

Furthermore, it is clear on this record that neither David nor his wife had any knowledge or notice of Jeffrey's misconduct until January or February of 1986, long after either of the properties in question were vested in both David and his wife as an estate by the entireties.

It is undisputed before me that, generally speaking, real property held as a bona fide estate by the entireties cannot be subjected to the payment of claims against only one spouse.

There is a complete absence of any claim or any evidence against David's wife in this action.

As is required by B.R. 9021, a separate judgment will be entered dismissing with prejudice the adversary complaint (No. 88–0587) (which sought exception from discharge) and overruling Chicago Title's objections to the debtor's claimed exemptions. The escrow agents are ordered to pay over forthwith to the debtor and his wife the escrowed funds from the two sales, together with all accrued interest.

Costs may be taxed on motion.

DONE and ORDERED.